STATE OF NEBRASKA, APPELLEE, V. LAWRENCE E. ATWATER, APPELLANT.

228 N. W. 2d 876

Filed May 8, 1975. No. 39616.

Frank B. Morrison, Sr., and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Defendant, Lawrence E. Atwater, prosecutes this appeal from two separate robbery convictions. In the first one, he was convicted by a jury after a lengthy trial on two counts. He assigns as error therein the overruling of his motion to suppress evidence, for the reason that his arrest was without probable cause. In the second

case, which involves a different robbery, he changed his plea during the course of the trial and pled guilty. There he assigns as error the insufficiency of the record to establish a waiver of his rights voluntarily, knowingly, and intelligently. We affirm both cases.

In the early morning hours of December 13, 1973, two black men forced their way into Champs Restaurant in Omaha, Nebraska. Three employees were robbed. One of them was beaten and his throat cut with a box knife. Further details of the robbery are immaterial. The only issue presented is whether the warrantless arrest of defendant, Lawrence Atwater, was illegal and without probable cause. If so, then articles found in a search incident to that arrest would be suppressed.

In the investigation of the robbery, the police ascertained that an automobile registered to Alonzo Atwater, a brother of the defendant, was parked in the Champs' parking lot near the time of the robbery. The police began a search for Alonzo, but found he was no longer at the address they had for him. Two officers then proceeded to the home of his mother. In response to a knock, the door was opened by an individual who identified himself as "Mr. Atwater." Shortly thereafter, Mrs. Atwater came to the door. The officers explained the purpose of their presence, and asked if either of the sons were there. They received an answer in the negative. The officers had been permitted to enter the house. While they were talking, they observed Lawrence Atwater come down a flight of stairs and walk into the room. They identified themselves, and he did likewise.

When the officers saw Lawrence, they decided he fit the description given to them of one of the robbery suspects. They then advised Lawrence they would like him to accompany them to the police station for questioning. Lawrence agreed to go, but told them he would have to go upstairs to get dressed. As they proceeded upstairs, Lawrence began arguing about whether he would accompany them to the station. He finally told

them he would not go unless he was under arrest. Lawrence was then advised he was under arrest.

As the officers entered the bedroom with Lawrence, they observed a brown leather jacket lying on the bed, which fit the description of the jacket one of the suspects had been wearing. One of the officers, who went with Lawrence into a clothes closet, saw a box cutting knife, which fit the description of the one involved in the robbery. It was later positively identified by one of the victims as the actual knife used in the robbery.

The question involved herein is the quantum of information necessary before an officer has probable cause to arrest. We said in State v. Russ (1975), *ante* p. 308, 226 N. W. 2d 775: "The applicable standard for an arrest without warrant is that there must exist reasonable ground to believe both that a felony has been committed and that the person arrested is guilty of such offense."

The applicable rule in applying this standard to a particular case is set out in Ker v. California (1963), 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, wherein the Supreme Court of the United States said: " '* * * there is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' " The ultimate test is whether the action of the officers was reasonable. State v. McElroy (1972), 189 Neb. 376, 202 N. W. 2d 752.

What information was within the knowledge of the officers at the time the arrest was made? A car observed at the scene was registered to Alonzo Atwater. Alonzo was black. Two black men had been involved. Lawrence was Alonzo's brother. When the officers arrived at the mother's home, they were first told that neither Lawrence nor Alonzo was present. They then observed Lawrence, who both officers believed fit the description given by the victims of one of the robbers. They requested that Lawrence accompany them to the police station for questioning. When Lawrence refused

to do so, the officers placed him under arrest. It was immediately thereafter that the incriminating evidence was found in his possession.

There is no question the officers knew the offense had been committed. The only question is, did they have reasonable grounds to detain the defendant? They knew an automobile belonging to defendant's brother had been observed at the scene of the robbery. They knew two black men were involved in the robbery. They believed the defendant fit the physical description of one of the participants given to them by the robbery victims. We believe this sufficient to give the officers reasonable grounds to detain defendant for preliminary questioning. When the defendant refused to accompany the officers, they properly placed him under arrest. There is no merit to defendant's assignment of error.

Defendant's other assignment of error is that the District Court sentence to a term of 10 to 30 years in the Nebraska Penal and Correctional Complex was excessive. The penalty provided for the offense is a term of not less than 3 years and not more than 50 years. § 28-414, R. R. S. 1943. The crime involved was a serious one and particularly agonizing and brutal for the victims. The throat of one of the victims was cut in an effort to force him to divulge the combination of the safe. A gun was placed in the mouth of a female victim, and the hammer was released but caught by the robber before contact was made. Defendant was convicted on two counts of robbery and given concurrent sentences of 10 to 30 years in the Nebraska Penal and Correctional Complex. We have said on many occasions that where the punishment of an offense created by statute is left to the discretion of the court to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed on appeal unless there appears to be an abuse of discretion. State v. Glouser (1975), *ante* p. 186, 226 N. W. 2d 134. There

was no abuse of discretion herein. Defendant's convictions for the Champs robbery are affirmed.

Defendant's second case involves a prosecution for forcibly and by violence taking from the personal protection of Bruce Kenny personal property of value, the property of the Pizza Hut, with intent to rob and steal. During the course of the trial defendant requested and was allowed to withdraw his plea of not guilty and enter a plea of guilty. Defendant was sentenced to 10 to 30 years in the Nebraska Penal and Correctional Complex, said sentence to be served concurrently with the sentences imposed for the Champs robbery. We affirm.

The only assignment of error is that the court committed reversible error in accepting defendant's plea of guilty without making a constitutionally required inquiry sufficient to show that the defendant pled guilty voluntarily, knowingly, intelligently, and with full knowledge of the rights he was waiving. This assertion is premised upon defendant's contention that the record does not affirmatively show the trial judge informed him of the possible penalties that could be imposed, relying on State v. Lewis (1974), 192 Neb. 518, 222 N. W. 2d 815.

This case may be distinguished from State v. Lewis, *supra*. The plea was taken during the course of the trial, which was aborted by the change of plea. The court carefully explained to the defendant the effect of a change of plea, and refused to accept it until defendant stated he was changing his plea because he had actually committed the robbery as charged in the two counts.

Defendant's attorney stated for the record that he had gone over the matter thoroughly with the defendant and that there was absolutely no chance of his obtaining an acquittal in the case. Defendant's fingerprints had been lifted from the site of the robbery, and both the fingerprint experts for the State and for the defendant agreed that the prints lifted were those of the defend-

ant. There is not the slightest doubt that the record indicates defendant's plea represented a voluntary and intelligent choice among the alternative courses of action open to the defendant, as required by State v. Turner (1971), 186 Neb. 424, 183 N. W. 2d 763. In Turner we said: "A plea of guilty must not only be intelligent and voluntary to be valid but the record must affirmatively disclose that the defendant entered his plea understandingly and voluntarily."

The only contention of the defendant is that the record does not affirmatively show that the court advised him of the possible penalty. Defendant at that time was awaiting sentence on his conviction on two counts of robbery in the previous case. After the entry of the plea, defendant expressly waived a presentence report in this case because one had been made and was in the possession of the court covering the Champs burglary. Sentencing was set for 2 days later to give the court and defendant's counsel time to read the presentence report.

During the course of the sentencing proceedings, the court said to the defendant: "The Court granted you leave to withdraw your plea of not guilty. And after the Court was fully satisfied that your plea was knowingly, voluntarily, and intelligently made, that you fully understood the significance and importance of your actions and knew the consequences that might inure because of your actions, the Court accepted your plea of guilty to that Count and found you guilty as charged, and a judgment of conviction was entered thereon."

Defendant at all times was represented by able counsel. We find his plea was entered understandingly and knowingly. The proof of his guilt as reflected by the record was overwhelming. Defendant at the time stood convicted of two counts of robbery but had not yet been sentenced thereon. He received 10 to 30 years sentences on each of the previous convictions, both sentences to be concurrent. He was sentenced to 10 to 30 years herein,

and the sentence was made concurrent with the sentences previously imposed. As Chief Judge Gibson observed in Entrekin v. United States (8th Cir., 1974), 508 F. 2d 1328: "It appears to be an exercise in futility and a waste of judicial resources to consider this collateral attack on a concurrent sentence after denying relief on the first sentence." Viewing the totality of the circumstances herein, we distinguish this case from State v. Lewis, 192 Neb. 518, 222 N. W. 2d 815, and affirm the conviction.

For the reasons stated, the convictions of the defendant for the Champs robbery and the conviction for the Pizza Hut robbery are affirmed.

AFFIRMED.